# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | U.S.C.A. No. **24-7229** |
| | ) | |
| | ) | U.S.D.C. No. **21cr1590-JLS** |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **JOSE ANGEL SERRANO**, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

*Appeal from the United States District Court*
*for the Southern District of California*
*Hon. Janis L. Sammartino, District Judge, Presiding*

# APPELLANT'S OPENING BRIEF

JOHN LANAHAN
P.O. Box 601400
San Diego, CA 92160
(619) 237-5498
E-mail: lawnahan@sbcglobal.net

*Attorney for Appellant*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

ISSUE PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    WHETHER THE WARRANTLESS SEARCH OF JOSE SERRANO'S
    LOCKED WORKBENCH VIOLATED THE FOURTH AMENDMENT
    TO THE UNITED STATES CONSTITUTION WHERE HIS WIFE
    ALLOWED THE POLICE TO SEARCH THE LOCKED
    WORKBENCH WITHOUT HIS CONSENT . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.  Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.  Basis for Subject Matter Jurisdiction in the
       District Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    2.  Basis for Jurisdiction in the Court of Appeals . . . . . . . . . . . . . . . . . 2

    3.  The Judgment Is Appealable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    4.  The Notice of Appeal Was Timely Filed . . . . . . . . . . . . . . . . . . . . . 2

    5.  Bail Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.  Proceedings and Disposition in the District Court . . . . . . . . . . . . . . . . . 3

C.  Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    Events leading up to the search . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    Testimony at the evidentiary hearing . . . . . . . . . . . . . . . . . . . . . . . . . . 5

i

Video/body cam evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

District Court's order denying motion to suppress . . . . . . . . . . . . . . . . . . 12

ARGUMENT

THE WARRANTLESS SEARCH OF JOSE SERRANO'S LOCKED
WORKBENCH IN HIS GARAGE WAS (1) NOT SUPPORTED BY
PROBABLE CAUSE, (2) NOT A PRIVATE SEARCH BY HIS WIFE,
WHO (3) LACKED CONSENT TO OPEN THE WORKBENCH. . . . . . . 13

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

A. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

B.  Applicable facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

C. The warrantless search of the locked workbench was unreasonable . . . 23

1. Search of the garage in general . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

2. The "peek" into the locked workbench . . . . . . . . . . . . . . . . . . . . . . . . 25

3. Mr. Serrano's wife could not give consent to search workbench . . . . . 31

4. Opening the locked workbench was not a private search . . . . . . . . . . . 34

5. Search warrant of Mr. Serrano's residence was fruit of the poisonous
tree . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

CERTIFICATION OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

CERTIFICATE OF COMPLIANCE WITH NINTH CIRCUIT RULE 32(e)(4) . 40

## Table of Authorities

**CONSTITUTION**

United States Constitution, Amend. IV . .   1, 5, 13-16, 23-24, 26-28, 31, 33, 34, 37

**CASES**

*Arizona v. Hicks*, 480 U.S. 321 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25-27

*California v. Hodari D.,* 499 U.S. 621 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Coolidge v. New Hampshire*, 403 U.S. 413 (1971) . . . . . . . . . . . . . . . . . . . . . 26

*Georgia v. Randolph*, 547 U.S. 103 (2006) . . . . . . . . . . . . . . . . . . . . . 4, 13, 31, 33

*G.M. Leasing Corp. v. United States*, 426 U.S. 338 (1988) . . . . . . . . . . . . . . . 28

*Illinois v. Andreas,* 463 U.S. 765 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Oliver v. United States*, 466 U.S. 170 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Payton v. New York*, 445 U.S. 573 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Texas v. Brown*, 460 U.S. 730 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Barnes*, 807 F.Supp. 1154 (N.D. Ga. 2021) . . . . . . . . . . . . . . 32

*United States v. Buck*, 2021 WL 122240 (C.D. Cal., 2021) . . . . . . . . . . . . . . . 30

*United States v. Cleaveland*, 38 F.3d 1092(9th Cir. 1998) . . . . . . . . . . . . . . . . 37

*United States v. Couch*, 378 F.Supp.2d 50 (N.D.N.Y., 2005). . . . . . . . . . . . . . 37

*United States v. Dearing*, 9 F.3d 1428 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . 32

iii

*United States v. Dunn*, 480 U.S. 294 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Echevarria*, 692 F.Supp. 322 (S.D.N.Y., 2010) . . . . . . . . . . . . . 30

*United States v. Heltsley*, 37 Fed.Appx. 270 (9th Cir. 2001) . . . . . . . . . . . . . . . 32

*United States v. Hood*, 493 F.2d 677 (9th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Jacobsen*, 466 U.S. 109 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Kim*, 105 F.3d 1579 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . 16, 24

*United States v. Lara*, 815 F.3d 605 (9th Cir, 2016) . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Maher*, 120 F.4th 297 (2d Cir. 2024) . . . . . . . . . . . . . . . . . . . . 37

*United States v. Malbrough*, 922 F.2d 458 (8th Cir. 1990) . . . . . . . . . . . . . . . . . 35

*United States v. Matlock*, 415 U.S. 164 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Miller*, 688 F.3d 652 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . 34, 35

*United States v. Morning*, 64 F.3d 531 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . 32

*United States v. Paige*, 136 F.3d 1012 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . 35

*United States v. Reed*, 15 F.3d 928 (9h Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . 32

*United States v. Rosenow*, 33 F.4th 529 (9th Cir. 2022) . . . . . . . . . . . . . . . . . . . 37

*United States v. Sherwin*, 539 F.2d 1 (9th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . 37

*United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . 35

*United States v. Walter*, 447 U.S. 649 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*United States v. Walther*, 625 F.2d 788 (9th Cir. 1981) . . . . . . . . . . . . . . . . . 34, 37

iv

*United States v. Wheeler*, 641 F.2d 1321 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . 29

*United States v. Williams*, 354 F.3d 497 (6th Cir. 2003). . . . . . . . . . . . . . . . . . . . 37

*United States v. Wilson*, 13 F.4th 961 (9th Cir. 2021). . . . . . . . . . . . . . . . . . . . . 37

*United States v. Wright*, 449 F.2d 1355 (D.C. Cir. 1971) . . . . . . . . . . . . . . . . . 30

## STATUTES

18 U.S.C. § 922(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

18 U.S.C. § 922(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 924(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

26 U.S.C. § 5861(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

26 U.S.C. § 5871 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1291(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## RULES

Federal Rules of Appellate Procedure 4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Rule of Appellate Procedure 32(a)(7)(C) . . . . . . . . . . . . . . . . . . . . . . . 40

Ninth Circuit Rule 32-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Federal Rule of Criminal Procedure 11(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | U.S.C.A. No. **24-7229** |
| | ) | |
| Plaintiff-Appellee, | ) | U.S.D.C. No. **21cr1590-JLS** |
| | ) | |
| v. | ) | |
| | ) | |
| **JOSE ANGEL SERRANO**, | ) | |
| | ) | |
| Defendant-Appellant | ) | |
| _____ | ) | |

## ISSUE PRESENTED FOR REVIEW

**WHETHER THE WARRANTLESS SEARCH OF JOSE SERRANO'S LOCKED WORKBENCH VIOLATED THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHERE HIS WIFE ALLOWED THE POLICE TO SEARCH THE LOCKED WORKBENCH WITHOUT HIS CONSENT**

## STATEMENT OF THE CASE

A.  **Nature of the Case**

  1.  **Basis for Subject Matter Jurisdiction in the District Court**

This appeal is from a conditional plea of guilty to convictions for one count of

Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g); one count of

possession of 104 grams of actual methamphetamine with the intent to distribute, in

-1-

violation of 21 U.S.C. § 841(a)(1); and one count of possession of an unregistered silencer, in violation of 26 U.S.C. § 5861(d) and 5871. [ER-5; CR 111].[1] The district court has jurisdiction under 18 U.S.C. § 3231.

## 2. **Basis for Jurisdiction in the Court of Appeals**

This Court has jurisdiction over appeals from final judgments under 28 U.S.C. § 1294(1).

## 3. **The Judgment Is Appealable**

A conviction and sentence in a criminal case is a final order subject to appeal under 28 U.S.C. § 1291.

## 4. **The Notice of Appeal Was Timely Filed**

The Judgment and Commitment was filed on November 25, 2024 [ER-5, CR 111]. The Notice of Appeal was filed in the district court on December 1, 2024 [ER-261; CR 112]. This is within the ten days required by Rule 4(b) of the Federal Rules of Appellate Procedure.

## 5. **Bail Status**

The defendant is now serving a prison sentence of one hundred twenty months imposed by the district court. His estimated release date is October 27, 2029.

---

[1] "ER" refers to the Excerpts of Record, "CR" refers to the Clerk's Record in the District court; and "RT" refers to the transcript of the hearing of the suppression in the district work.

B.  **Proceedings and Disposition in the District Court**

On May 27, 2021, a twelve count information was filed in the United States District Court for the Southern District of California charging Jose Angel Serrano, the appellant, with four counts of Possession of a Firearm by a Felon, in violation of 18 U.S.C. § 922 (g); one count of possession of methamphetamine with the Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1); one count of possession of cocaine with the Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1); four counts of Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)()(i); one count of Possession of a Firearm with an Obliterated Serial Number, in violation of 21 U.S.C. § 922(k); and one count of Possession of a Unregistered Silencer, in violation of 26 U.S.C. §§ 5861(d) and 5871 [ER-254; CR 17].

On April 5, 2024, he entered a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2) to counts four, five, and twelve of the information [CR 94]. On November 22, 2024, he was sentenced to 120 months in prison on all three counts, to run concurrently [ER-5; CR 110]. The judgment was entered on November 25, 2024 [ER-5; CR 111]. Notice of Appeal was filed on December 1, 2024 [ER-261; CR 112].

-3-

## STATEMENT OF FACTS

### Introduction

This is an appeal from a conditional guilty plea challenging the warrantless search of Jose Serrano's locked workbench in his garage, based upon consent given his wife, which resulted in the affidavit and search warrant for the rest of his residence [ER-71, RT 6]. Mr. Serrano moved to suppress the warrantless search of a locked workbench located in his garage, where his wife allowed the police to look inside the locked workbench without consent, relying upon *Georgia v. Randolph*, 547 U.S. 103, 106 (2006) [ER-215]. The Government justified the search of the locked workbench as a private search by his wife and also that the items mentioned in the affidavit in support of the search warrant were in "plain view" of the Chula Vista police [ER-77, RT 12].

### *Events leading up to the search*

The Chula Vista police had come to the house in response to call by Mr. Serrano's wife that he had molested her fourteen year old daughter. The police found a locked workbench with drawers and she told the police she did not have consent to open it  [ER-72-73; RT 7-8]. After she was told by the police there was not enough evidence to arrest her husband on the sex complaint, she agreed to open the workbench while her husband was detained by the police outside his home [ER-77,

-4-

RT 7]. The contents of the locked workbench were used to arrest Mr. Serrano and were referred to in the affidavit for a warrant to search the home, which was executed the next day. [ER-71-72; RT 7-8]. The Government argued that the search of the locked workbench was a private search by Mr. Serrano's wife, who was not an agent of law enforcement, and therefore the Fourth Amendment was not violated [ER-76-ER-77; RT 11-12].

**Testimony at the motion hearing on November 22, 2022**

At the hearing on the motion to suppress evidence, the Government's only witness was **Shaun Myers**, a detective with the Chula Vista Police Department [RT 18, ER-83]. On March 15, 2021, he went to Mr. Serrano's residence to investigate a call that Mr. Serrano had raped one of his stepdaughters [RT 18, ER-83]. Myers spoke to Mr. Serrano's wife on and off from 7:25 to 9:00 PM. [RT 38, ER-103]. During that time he was aware Mr. Serrano had been just detained outside so he could not walk in during the investigation after driving up to his house [RT 38-39, ER-103-ER-104]. While there, Myers was lead into the garage by one of Mr. Serrano's stepdaughters [ER-88; RT 23]. There was a refrigerator in the garage to which others in the residence had access, also to take care of the dogs kept in the garage [ER-89; RT 24]. Inside the garage was a locked workbench where Ms. Serrano told the police Mr. Serrano stored his drugs [ER-90-91; RT 25-26]. Myers had a flashlight and used

(12 of 46), Page 12 of 46     Case: 24-7229, 05/30/2025, DktEntry: 10.1, Page 12 of 46

it to look inside an inch and a half gap to see inside the drawer [ER-91, ER-110; RT 26, 45]. He was not sure he could have seen inside it without a flashlight. [ER-130, RT 65]. He testified he did not move the drawer with his thumb but he bent down and used the flashlight to peek inside the locked drawer to see things. [ER-111, RT 46]. He did that without consent. [ER-110, RT 45]. He could see two scales, a large and a small one, which had what Myers believed was either cocaine or fentanyl residue not amounting to a line of drugs. [ER-91 - ER-92; ER-111; RT 26-27]. He did not see pay/owe sheets or a mirror [ER-91, RT 46]. He believed there was reasonable suspicion the workbench contained drugs but insufficient to amount to probable cause to break it open. [ER-88, RT 43].

Ms. Serrano asked him if he could break into it. [ER-90, RT 25]. He responded he could not without a warrant. [ER-90, ER-107, ER-119; RT 25, 42, 54]. She was informed she could get a restraining order after he explained to her that there was not enough evidence to arrest her husband and he would be released. She expressed concern that he could flee to Mexico and produced a key that would open the workbench to the police could search it. [ER-96, ER-97, ER-105, ER-107, ER-116-ER-117, ER-120; RT 31-32, 40, 42, 51-52, 55]. She opened the drawer and Myers used his flashlight to illuminate the area so he could see what was in it. [ER-121, 130; RT 56, 65]. He would not have been able to see the contents of the drawer if she had

not opened it. [ER-130, RT 65]. He asked her not to stop moving things around but did not tell her to take anything out of the drawer. [ER-97, RT 32]. She "pulled everything out and opened everything up." [ER-112, RT 47]. That's when Myers saw what looked like a rock of methamphetamine in Ms. Serrano's hand and he knew the drawer contained narcotics. [ER-112, ER-122, ER-127; RT 47, 57, 62]. At that point Myers believed there was probable cause and he and other police officers searched the rest of the workbench, not just the top drawer, around 7:28 PM. [ER-113-114, ER-124, ER-126; RT 48-49, 59, 61; Defense Exhibits 7, 13]. ]. Myers also believed there was now probable cause to arrest Mr. Serrano, who was detained outside. [ER-113-114, ER-124-125, RT 48-49, 59-60]. Mr. Serrano was arrested and searched [ER-125, RT 60]. On him was a key that opened a safe in one of the downstairs bedrooms, although the safe was not searched until after the police obtained a search warrant based upon the discovery of drugs in the locked workbench. [ER-125-126, RT 60-61].

**Video/body cam Evidence**

Defense Exhibits 5, 7, 12, 13, and 14 were admitted into evidence, as were Governments's Exhibits Rape-15.mp4, Rape-4.mp4, and Rape-25.mp4. [ER-141, CR 54]. Defense Exhibit D-7 and Government's Exhibit Rape-15.mp4 are the same, as is Defense Exhibit D-13 and Government's Exhibit Rape-25.mp4.

-7-

These can be summarized as follows;

**Defense Exhibit D-5**: **Body cam beginning at 5:10 PM**[2]

0.54: Ms. Serrano pulls on top upper drawer of locked workbench
1:08 : She pulls on top drawer again: no gap revealed
1:12:  Det. Myers tells Ms. Serrano he cannot open workbench without  a
    warrant

**Defense Exhibit D-7/Government Exhibit Rape-25.mp4: Body cam video
begins at 5:25 PM**

0:30 Det. Myers kneels down, uses flashlight to look into workbench
0:40 Det. Myers tells Ms. Serrano he needs a reason to get a warrant
0:54: Det. Myers looks into drawer with flashlight, thumb under drawer
1:30: Det. Myers asks daughter if she has seen fentanyl pills in the drawer
2:38: Det. Myers looks into drawer again, with flashlight and thumb under it
3:50: Dogs are let into the garage
5:26: Ms. Serrano says everything in the garage is her husband's
5:35: She says other family members do not go into the garage unless they
    need something for the house

**D-12: Body Cam video begins at 6:42 PM**

2:05: Det. Myers examines contents of Ms. Serrano's purse
2:28: Asks her if she has any weapons on her
3:08: Det. Myers tells Ms. Serrano in a rape case it's he said/she said
4:00: Det. Myers tells her they had to let her husband go because of the state
    of the evidence
4:07: Det. Myers tells Ms. Serrano they have no proof of anything
6:01: Det. Myers tells Ms. Serrano they cannot search the garage
6:21: Ms. Serrano says she has the keys
8:25: Another officer of camera tells Ms. Serrano she can get a protective order
8:52: Ms. Serrano gets up from kitchen table, goes to garage

---

[2]The format for the timing on the Exhibits is (number of) minutes: (number of)
seconds

9:05: Det. Myers follows her into the garage
9:21: Ms. Serrano unlocks the drawer
9:29: Det. Myers looks at open drawer with flashlight
9:37: Ms. Serrano opens black zipped bag
9:48: Black bag contains packets
10:05: Ms. Serrano going through contents of drawer while Det. Myers
     holds flashlight
10:49: Scale is in the back of the open drawer
11:25: Ms. Serrano takes things out of top drawer
11:45: Ms. Serrano stops searching

**D-13: Body cam video begins at 6:44 PM**
(same as D-12, from a different angle – also Govt's Ex. Rape-25.mp4

1:12: Det. Myers tells Ms. Serrano they need more evidence
1:18: All they have now are allegations
1:25: Tells Ms. Serrano they had to let her husband go
1:39: Det. Myers tells Ms. Serrano he knows her husband will go to Mexico
1:50: Det. Myers tells Ms. Serrano they have no proof of anything, had to
     let him go
2:50: Det. Myers says there's only so much they can do, have to follow the
     law
3:15: Det. Myers tells her if her husband is arrested now, he would be
     released in 48 hours
3:27: Myers tells Ms. Serrano they cannot search the garage because it's his
     space
3:45: Det. Myers tells Ms. Serrano her husband is now accused of rape
4:51: Ms. Serrano tells Det. Myers he husband has a gun, he responds her
     husband is unarmed
5:45: Another police officer off camera tells Ms. Serrano they have to let
     her husband go
5:50: She is told she can serve him with a protective order
6:17: Ms. Serrano gets up from kitchen table, goes to garage
6:30: Det. Myers and two other officers follow her into the garage
6:49: Ms. Serrano opens the drawer
6:56: Det. Myers holds flashlight as Ms. Serrano searches drawer, same as
     on D-12

9:11: Ms. Serrano stops searching the drawer

**D-14: Body cam video begins at 6:59 PM**

0:36: Police go through the contents of top drawer
1:00: Police open top drawer
1:45: Police take what looks like pay/owe sheets
3:24: Pills in black zipped bag in top drawer are photographed
4:00: Rock of white substance taken from black zipped bag
4:35: Title of car (?) taken from black zipped bag
4:51: Another white rock taken from back zipped bag
5:15: Black zipped bag with contents collected
6:35: Police call in that drugs have been found
6:50: Residue from mirror scooped up and put in plastic bag
9:49: Scale is taken

**Government's Exhibit Rape-4.mp4: Body cam video begins at 7:11 PM**

Search of upstairs of home and questioning Mr. Serrano's stepdaughter[3]

After the locked workbench was searched, the police filed an affidavit in

support in support of the search warrant. The affidavit stated that Mr. Serrano gave

his stepdaughter cocaine and then sexually assaulted her on March 14, 2021. [CR

35-3, ER-236]. The affidavit also stated that Ms. Serrano told the police her

husband possessed and used drugs, he was known to carry a concealed and loaded

---

[3]Mr. Serrano did not contest the search of the upper part of the house for evidence in support of the sexual assault charge because his wife could give consent to the shared areas on the second floor. The evidence collected as a result of that search was not relied upon in the affidavit in support of the search warrant that was used to search the rest of the house and to seize evidence used against Mr. Serrano in the federal case. [ER-236-242].

-10-

handgun, and that she pointed out Serrano's known drug concealed location inside a workbench [CR 35-3, ER-237]. It omitted the workbench was locked.

The affidavit also stated that Mr. Serrano admitted being with his fourteen year old step-daughter but denied any wrongdoing. [CR 35-3, ER-237]. It also stated that Mr. Serrano's wife "located the key to the workbench and without instruction opened it." [ER-237]. She alerted Officers of what she found and showed Agent Myers. [ER-237]. The affidavit stated that Agent Myers located a plastic bag containing a white crystalline  substance, five separate baggies containing 10 blue colored pills with the imprinted with M 30 believed to be fentanyl inside the workbench. The white crystalline substance tested positive for methamphetamine with a net weight of 23.5 grams. Two working digital scales, several hand written documents indicative of pay/owe sheets were also located [35-3, ER-237]. The affidavit also stated that $15,000 in United States currency was in the glove compartment of Mr. Serrano's car as well as a small plastic bag containing methamphetamine was found under the driver's floorboard. [ER-238; CR 35-3]. The affidavit also stated that Mr. Serrano's wife later showed officers a firearm loaded with fifteen rounds of 9mm ammunition located in a dresser of a shared master bedroom. [ER-238, CR 35-3].

Based upon that affidavit, a search warrant issued and Mr. Serrano's home

was searched. The following items were seized:

> Approximately 3 kilos of cocaine
> Approximately two kilos of methamphetamine
> Approximately $50,000 United States currency
> An electric money counter
> .45 cal. handgun
> Three rifles
> Items showing dominion and control of the area by Mr. Serrano
> An electric bracelet that opened a safe
> 1 DVR
> Three cellphones
> Two sets of body armor
> Pay/owe sheets
> Drug paraphernalia
> 50 m-30 pills (suspected fentanyl)
> 1 firearm noise suppressor
> Digital cases.

(ER- 253; CR 35-3]

**District Court's order denying motion to suppress**

After the evidentiary and further briefing, the district court issued a written

order on November 22, 2022, denying the motion to suppress. It did not address

Mr. Serrano's claim that the search based upon consent of Mr. Serrano's wife was

contrary to *Georgia v. Randolph*, 547 U.S. 103 (2006). Instead, it found that Ms.

Serrano had common authority over the garage and therefore she could give

consent for the police to inspect the garage. [ER-13; CR-65], It also found that

Det. Myers "peek" into the locked workbench bench was not a unreasonable

-12-

search or seizure. [ER-15, CR 65]. It also found that the search of the workbench by Mr. Serrano's wife was a private search because she was not functioning as a government agent. [ER-18-22; CR 65]. Because the district court found the search of the locked workbench did not violate the Fourth Amendment, it found that the seizure of other items in other parts of the house pursuant to the search warrant that relied upon the information in the affidavit in support of the warrant did not violate the Fourth Amendment. [ER-23, CR 65].

**ARGUMENT**

**I. THE WARRANTLESS SEARCH OF JOSE SERRANO'S LOCKED WORKBENCH IN HIS GARAGE WAS (1) NOT SUPPORTED BY PROBABLE CAUSE, (2) NOT A PRIVATE SEARCH BY HIS WIFE, WHO (3) LACKED CONSENT TO OPEN THE WORKBENCH**

**Summary of Argument:**

The firearms and drugs that were seized from Mr. Serrano's locked workbench in the garage of his residence were the basis of the federal charges filed in this case. The contents of the locked workbench were seized by the police without a warrant. The police gained access to the workbench after Mr. Serrano's wife, who told the police she did not have consent to open the workbench, opened it in their presence as part of an investigation of Mr. Serrano's alleged criminal activity while he was detained by the police outside hIs home. The contents of the

-13-

locked workbench that was searched without a warrant were the basis for probable cause for the issuance of the search warrant for Mr. Serrano's residence, which produced additional evidence that was used in his federal prosecution.

Mr. Serrano moved to suppress the admission of the contents of the locked workbench and other items seized as a result of the search warrant that had been issued based upon the items found in the locked workbench, because his wife could not give consent to open the workbench, and these illegally seized items infected the validity of the search warrant that was used later to search his whole house. The district court denied the motion after an evidentiary hearing and a review of body cam videos of the police at the house. The district court did not address the principal basis for the suppression motions, that Mr. Serrano's wife could not give consent to open the locked workbench bench. Instead, it found that the two scales with a residue of white powder seen by the lead detective as he peeked into a gap in the locked workbench bench with a flashlight were in "plain view" and neither a search nor a seizure. It then held that the later search of workbench that had been unlocked by Mr. Serrano's wife in the presence of the police while they were gathering evidence against Mr. Serrano was a private search that did not involve law enforcement and hence no violation of the Fourth Amendment.

-14-

The facts of this case show that Ms. Serrano was working with the police to gather evidence that would result in her husband's arrest, and therefore her actions were not a private search independent of law enforcement. She also told the police she did not have permission to open the locked workbench, to which the lead detective responded the police could not search the workbench without Mr. Serrano's consent. Her husband was detained by the police outside the house and was never asked if he consented to the search of the workbench or his house. [ER-229]. Despite that, the police followed Ms. Serrano to the workbench, shone a flashlight on the contents as she opened it, then joined in the search and inventoried items that were later listed as the basis for probable cause in the affidavit in support of the search warrant.

The warrantless search of the locked workbench did not fall within any of the exceptions to the warrant requirement under the Fourth Amendment. The initial "peek" into the locked workbench by the detective was made without reasonable suspicion or probable cause to believe the locked workbench bench contained drugs. At best, as admitted to by the lead detective at the evidentiary hearing, the "peek" provided reasonable suspicion but not probable cause necessary for a warrantless search of the locked workbench.

The later warrantless search of the workbench that was unlocked by Mr.

-15-

Serrano's wife in the presence of the police violated the Fourth Amendment in two ways: (1) she did not, by her own admission to the police, have her husband's consent to open the locked workbench and (2) she opened the workbench in the presence of the police, who followed her in an effort to gather sufficient evidence to arrest her husband, thereby barring the warrantless search of the workbench from falling within the "private search" exception to the warrant requirement. The evidence that the police seized from the workbench bench was used as the probable cause for the later search of the entire house that produced the evidence necessary to prosecute the federal charges in this case, and was the fruit of the poisonous tree of the initial illegal warrantless search.

For all of these defects, the district court's order denying Mr. Serrano's motion to suppress evidence should be reversed and this case remanded with directions the motion to suppress be granted.

## A.  Standard of Review

A district court's denial of a motion to suppress based upon the Fourth Amendment is reviewed *de novo. United States v. Lara*, 815 F.3d 605, 608 (9th Cir. 2016); *United States v. Kim*, 105 F.3d 1579 (9th Cir. 1997). A district court's factual findings are reviewed under a clearly erroneous standard. *United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1993).

-16-

**B.  Applicable facts:**

On March 15, 2021, the Chula Vista police arrived at Mr. Serrano's two story residence in Chula Vista in response to call by Mr. Serrano's wife that he had sexually assaulted her fourteen year old daughter. They arrived that afternoon and she consented to a search of the common areas of the house and the upstairs bedrooms and bathrooms where the alleged assault had taken place. Mr. Serrano was not there. He did not contest the search of the upper part of the house for evidence in support of the sexual assault charges that were filed in a state case because his wife could give consent to the shared areas on the second floor. The evidence collected as a result of that search, with the exception of a gun found in a dresser in a bedroom Mr. Serrano shared with his wife, was not relied upon in the affidavit in support of the search warrant that was used to search the rest of the house and to seized evidence used against Mr. Serrano in the federal case. [ER-236-242].

While the search of the upstairs of the house was taking place, Mr. Serrano returned home and was detained outside the house by the police. [ER-229]. The search moved downstairs, to an attached garage, which Ms. Serrano said was her husband's space and the rest of the family had permission only to access a refrigerator in the garage and to allow pets inside to be fed. [Exhibit D-7 at 3:50,

-17-

5:26, 5:35]. There the police found a locked workbench with drawers and Ms.

Serrano told the police she did not have consent to open it  [ER-72-73; RT 7-8].

After she was told by the police there was not enough evidence to arrest her

husband on the sex complaint, she agreed to open the workbench in the presence

of the police while her husband was detained by the police outside his home [ER-

77, RT 7]. The contents of the locked workbench were used to arrest Mr. Serrano

and were referred to in the affidavit for a warrant to search the home, which was

executed the next day. [ER-236 - ER-238; RT 7-8].[4]

### Evidence at the motion hearing on November 22, 2022 and video exhibits

At the hearing on the motion to suppress evidence, the Government's only

witness was **Shaun Myers**, a detective with the Chula Vista Police Department

[RT 18, ER-83]. On March 15, 2021, he went to Mr. Serrano's residence to

investigate a call that Mr. Serrano had raped one of his stepdaughters [ER-83, RT

18]. Myers spoke to Mr. Serrano's wife on and off from 7:25 to 9:00 PM. [ER-

103, RT 38]. During that time he was aware Mr. Serrano had been detained

outside to prevent him from walking in during the investigation after driving up to

---

[4]The affidavit in support of the search warrant also stated that a loaded handgun with "El Joey" engraved on it had been found in a dresser in the shared bedroom of Mr. Serrano and his wife, but did not state any facts to show that his possession of a handgun in his home was illegal.

his house [ER-103-104, RT 38-39].

    While there, Myers was lead into the garage by one of Mr. Serrano's stepdaughters [ER-88; RT 23]. There was a refrigerator in the garage to which others in the residence had access, also to take care of the dogs kept in the garage [ER-89; RT 24; Defense Exhibit D-7 at 3:50, 5:26, 5:35]. Inside the garage was a locked workbench where Ms. Serrano told the police Mr. Serrano stored his drugs [ER-90-91; RT 25-26; Defense Exhibit D-5 at 0:54; 1:08]. Myers had a flashlight and bent down to look inside what he characterized as an inch and a half gap to see inside the drawer [ER-91, ER-110; RT 26, 45; Defense Exhibit D-7 at 0:40, 0:54, 2:38]. He was not sure he could have seen inside it without a flashlight. [ER-130; RT 65]. He testified he did not move the drawer with his thumb but he bent down and used the flashlight to peek inside the locked drawer to see things. [ER-111, RT 46]. He did that without consent. [ER-110, RT 45]. He could see two scales, a large and a small one, which had residue of a white powder Myers believed was either cocaine or fentanyl not amounting to a line of drugs [ER-91-92; ER-111; RT 26-27, 46;]. He did not see pay/owe sheets or a mirror [ER-91, RT 46]. He believed there was reasonable suspicion the workbench contained drugs but insufficient to amount to probable cause to break it open. [ER-88, RT 43].

    Ms. Serrano asked him if he could break into it. [ER-90, RT 25]. Myers

-19-

responded the garage was her husband's space and they he could not search it without a warrant. [ER-90, ER-107, ER-119; RT 25, 42, 54; Defense Exhibit D-5 at 1:12; Defense Exhibit D-13 at 3:27]. She was informed she could get a protective order after he explained to her that there was not enough evidence to arrest her husband and he would be released in 48 hours. [Defense Exhibit D-12 at 3:08, 4:00, 4:07, 8:25; Defense Exhibit D-13 at 1:12, 1:18, 1:25, 1:50, 2:50, 5:45, 5:50]. She expressed concern that he could flee to Mexico and produced a key that would open the workbench to the police could search it. [ER-96, ER-97, ER-105, ER-107, ER-116-117; RT 31-32, 40, 42, 51-52, 55; 120; Defense Exhibit D-12 at 6:21]. The police followed her from the kitchen back into the garage, where she opened the drawer and Myers used his flashlight to illuminate the area so he could see what was in it. [ER-121, ER-130; RT 56, 65; Defense Exhibit D-12 at 8:52, 9:05, 9:21, 9:29, 10:05, Defense Exhibit D-13, at 6:17, 6:30, 6:49, 6:56].

He would not have been able to see the contents of the drawer if she had not opened it. [ER-130, RT 65]. He asked her not to stop moving things around but did not tell her to take anything out of the drawer. [ER-97, RT 32]. She "pulled everything out and opened everything up." [ER-112, RT 47]. That's when Myers saw what looked like a rock of methamphetamine in Ms. Serrano's hand and he knew the drawer contained narcotics. [ER-112, 122, 127; RT 47, 57, 62]. At that

point Myers believed there was probable cause and he and other police officers searched the rest of the workbench, not just the top drawer, around 7:28 PM. [ER-113-114, 124, 126; RT 48-49, 59, 61]. Myers also believed there was now probable cause to arrest Mr. Serrano, who was detained outside. [ER-113-114, 124-125; RT 48-49; 59-60]. After Ms. Serrano finished searching the top drawer, the police took over and went through the contents of the formerly locked workbench. [Defense Exhibit D-13 at 9:11, Defense Exhibit D-14, at 0:36 - 9:49].

Mr. Serrano, who had previously been told he would be released, was arrested and searched [ER-125, RT 60]. On him was a key that opened a safe in one of the downstairs bedrooms, although the safe was not searched until after the police obtained a search warrant based upon the discovery of drugs in the locked workbench. [ER-125-126; RT 60-61].

After the locked workbench bench was searched, the police filed an affidavit in support in support of the search warrant. The affidavit stated that Mr. Serrano gave his stepdaughter cocaine and then sexually assaulted her on March 14, 2021. [ER-236; CR 35-3]. The affidavit also stated that Ms. Serrano told the police her husband possessed and used drugs, he was known to carry a concealed and loaded handgun, and that she pointed out Serrano's known drug concealed location inside a workbench box [ER-237, CR 35-3]. It omitted the workbench

-21-

was locked.

The affidavit also stated that Mr. Serrano admitted being with his fourteen year old step-daughter but denied any wrongdoing. [ER-237; CR 35-3]. It also stated that Mr. Serrano's wife "located the key to the workbench and without instruction opened it." [ER-237, CR 35-3]. She alerted Officers of what she found and showed Agent Myers. [ER-237, CR 35-3]. The affidavit stated that Agent Myers located a plastic bag containing a white crystalline substance, five separate baggies containing 10 blue colored pills each with an imprint of M 30 believed to be fentanyl inside the workbench box. The white crystalline substance tested positive for methamphetamine with a net weight of 23.5 grams. Two working digital scales, several hand written documents indicative of pay/owe sheets were also located [ER-237, CR 35-3]. The affidavit also stated that $15,000 in United States currency was in the glove compartment of Mr. Serrano's car as well as a small plastic bag containing methamphetamine was found under the driver's floorboard. [ER-238, CR 35-3]. The affidavit also stated that Mr. Serrano's wife later showed officers a firearm loaded with fifteen rounds of 9mm ammunition located in a dresser of a shared master bedroom. [ER-238, CR 35-3].

Based upon that affidavit, a search warrant issued and Mr. Serrano's home was searched. The following items were seized:

-22-

Approximately 3 kilos of cocaine
Approximately two kilos of methamphetamine
Approximately $50,000 United States currency
an electric money counter
.45 cal. handgun
Three rifles
Items showing dominion and control of the area by Mr. Serrano
An electric bracelet that opened a safe
1 DVR
Three cellphones
Two sets of body armor
Pay/owe sheets
Drug paraphernalia
50 m-30 pills (suspected fentanyl)
1 firearm noise suppressor
Digital cases.

(ER- 253; CR 35-3]

## C. The warrantless search of the locked workbench was unreasonable

The district court denied the motion to suppress for a number of reasons.

First, it found the garage was an area that was shared by Mr. Serrano and other

family members and therefore his wife could give consent to have the police

search it. [ER-12-14, CR 65]. It next found the "peek" inside the locked work

bench by Det. Myers with a flashlight was a "plain view" search that did not

violate the Fourth Amendment. [ER-14-16, CR 65]. The district court then found

the later search of the locked work bench by Ms. Serrano in the presence of the

police was a private search that did not involve law enforcement and therefore did

-23-

not violate the Fourth Amendment. [ER-16-24, CR 65]. Because the district court found the search of the workbench bench was legal, it found the search warrant that relied upon the items found in the workbench bench was not tainted. [ER-23, 65].

**1. Search of the garage in general**.

The district court relied upon the general language in *United States v. Matlock,* 415 U.S. 164, 169-172 (1974), that law enforcement officers may obtain consent search from a third party who possess common authority over the premises. [ER-13]. In this case, however, Ms. Serrano told Det. Myers that everything in the garage was her husband's and other family members would not go into the garage unless they needed something for the house. [Defense Exhibit 7, at 5:26-5:35]. During that conversation, the family dogs were let into the garage. [Defense Exhibit 7 at 3:30]. It was the practice of this family that Mr. Serrano exercised control over the garage and other family members were granted access on a limited basis. This is different from the shared control over access to a storage locker the defendant shared with an associate in *United States v. Kim*, 105 F.3d 1579, 1582 (9th Cir. 1997), relied upon by the district court, where Kim's associate was given the authority to lease lockers, granted access to the lockers, and allowed to retain the keys. Det. Myers also believed there was insufficient

-24-

evidence for him to arrest Mr. Serrano and the police could not search the garage. [Defense Exhibit 12, at 6:01].

## 2. The "peek" into the locked workbench

Although Det. Myers believed the police lacked probable cause to search *the garage*, that did not prevent him from peeking into the locked workbench located within it. Even assuming Ms. Serrano had common authority to allow the police into the garage, it was clear she did not have authority over the locked workbench bench inside the garage. Myers's decision to peek inside the workbench, an area that was located in an area of the house where he did not have probable cause to search, shows he crossed a line that he knew he should not. The district court found that the scales and white residue Det. Myers saw peering into the locked workbench was permissible as "plain view;" but "plain view" cannot happen where the evidence is seen in an area where the police are not allowed *and* lack probable cause to search. *Arizona v. Hicks*, 480 U.S. 321, 326 (1987) ; *Illinois v. Andreas*, 463 U.S. 765, 771. The "plain view" in this case occurred while Det. Myers was in a space he lacked the probable cause to search. [Defense Exhibit 12 at 6:01]. Even after peering into the workbench by what he claimed was an inch an half gap (created when Ms. Serrano had earlier pulled on the drawer to show it was locked) what he saw was enough to create only a reasonable suspicion

-25-

the workbench contained drugs but not probable cause to search it without a

warrant or to arrest Mr. Serrano. [ER-88, RT 43, Defense Exhibit 5 at 1:12,

Defense Exhibit D-12 at 4:00, 6:01].

     The district court, in finding what Det. Myers saw when he peeked into the

locked workbench was the result of neither a search nor a seizure, indicates a

serious misunderstanding of plain view. "Plain view" within the meaning of the

Fourth Amendment depends upon the context in which the search occurs -- how

the evidence came into "plain view." As the Supreme Court noted in *Coolidge v.*

*New Hampshire*, 403 U.S. 443, 465-466 (1971) "almost any evidence is in 'plain

view' at the time of the seizure. For an object to be in plain view so as to be

admissible as evidence under the Fourth Amendment, it must be in plain view at

the time of the execution of a search warrant or come into view during an

exception to the warrant requirement, such as 'hot pursuit' or a search incident to

an arrest. It may also be admitted when the police are not searching for evidence

against the accused  but inadvertently come across an incriminating object. The

Court noted, however, that the plain view doctrine may not be used to extend a

general exploratory search from one object to another until something

incriminating at last emerges. *Id.,* 466-467.

     The district court cited *Arizona v. Hicks* at 480 U.S. at 128, to note that "a

truly cursory inspection – one that involves merely looking at what is already exposed to view, without disturbing it – is not a 'search' for Fourth Amendment purposes; but the search of the locked workbench was akin to moving a turntable in *Hicks* to check for a serial number without probable cause to believe it was stolen. The search of the locked workbench bench was also not cursory. Myers focused on it, asked family members if they knew it contained drugs, and crouched down and used his flashlight to peer into a gap of a inch an a half into a space that its owner, Mr. Serrano, intended to be private. For that he needed probable cause, which he admitted he did not have.

The cases relied upon by the district court in support of its finding that Myers's peek inside the locked workbench box was "plain view" can be distinguished. [ER-15-16]. *Texas v. Brown,* 460 U.S. 730, 740 (1983), was a car search, not the warrantless search of a locked container inside a residence. During the car stop in *Brown*, the police shone a light into the car from a place they had a right to be, the street, to check the driver's license of the driver and saw a items that were commonly used in drug trafficking. The Court, quoting *Payton v. New York*, 445 U.S. 573, 587 (1980) stated "'objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively

reasonable, assuming that there is probable cause to associate the property with criminal activity.' A different situation is presented, however, when the property in open view is "'situated on private premises to which access is not otherwise available for the seizing officer.'" *Ibid*., quoting *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 354 (1977). As these cases indicate, "plain view" provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment. 'Plain view' is perhaps better understood, therefore, not as an independent 'exception' to the Warrant Clause [of the Fourth Amendment], but simply as an extension of whatever the prior justification for an officer's 'access to an object' may be. The search in *Brown* was from the street, where the police had a right to be, using a flashlight as part of routine police activity of checking the driver's license; not within a residence to look into an area intended to be private.

United States v. Dunn, 480 U.S. 294, 301-303 (1987) , also relied upon by the district court, involved a flashlight search into a barn that was outside the curtilage of the residence of the barn owner. The Court found the barn was far enough from the residence as to fall within the "open fields" exception stated in *Oliver v. United States*, 466 U.S. 170 (1984). The search in this case, however, was in the garage of Mr. Serrano's residence, into a space he had locked to prevent

-28-

the contents from being exposed to view.

The other circuit or district court cases relied upon by the district court can also be distinguished. *United States v. Hood*, 493 F.2d 677, 680 (9th Cir. 1974), was, like *Brown*, a car stop where occupants of the car were asked to get out of the car after it was observed weaving and the license plate light was burnt out. The police then shone a flashlight to see into the car from the street and saw an open purse with pills that were seized. *United States v. Wheeler*, 641 F.2d 1321, 1324 (9th Cir. 1981) involved the attempt by the police to contact Wheeler, the tenant of one half a duplex, to resolve a civil dispute over property missing from a co-tenant's garage. The police looked through a one inch gap between the garage and a six foot fence surrounding Wheeler's property but saw no one. Attempts to call out for Wheeler to appear got no answer but a phone rang in the apartment after four rings, indicating it had been answered. A police officer wanted a better look into the yard to see if Wheeler was there and stood on two tires from a common driveway for the tenants so he could look over the six foot fence. There he saw what appeared to be public road signs and a marijuana plant. He arrested no one but reported what he saw at the police station. Based upon that, a search warrant issued and drugs and guns were found at the residence. A divided panel upheld the search as an attempt to resolve a civil dispute and not, as in this case, a criminal

-29-

investigation.

In *United States v. Buck*, 2021 WL 1124290 (C.D. Cal. 2021)

D. , also relied upon by the district court, the defendant invited the police into his

apartment where a naked dead man had been found. There, the police saw

evidence of narcotics on the kitchen table and baggies with white reside and the

bulb of a meth pipe inside an *open* chest of drawers. The totality of these facts

indicating the naked man may have overdosed on drugs provided sufficient

probable cause to search the contents of the already open chest of drawers. Here,

by contrast, the workbench was locked, not open, and there was no other evidence

in plain view that would provide probable cause to search it.

In *United States v. Wright*, 449 F.2d 1355, 1356-57, 1359 (D.C. Cir. 1971),

also relied upon byt the district court, the Court upheld the search *from a common

alley* by shining a flashlight into a eight inch gap of an *open* garage door. In

*United States v. Echevarria*, 692 F.Supp.2d 322, 332 (S.D.N.Y. 2010), also relied

upon by the district court, the police were investigating a parked truck that may

have been involved in suspicious activity during which Echevarria, the defendant,

threw a box that smelled of marijuana *onto the street*. The box came open and it

looked like it contained marijuana. The district court found this created reasonable

suspicion to detain the defendant. In this case, by contrast, there was no

abandonment of the property, as in *California v. Hodari D*., 499 U.S. 621, 629 (1991), analogous to throwing the box of marijuana onto the street that would neutralize any Fourth Amendment claim.

### 3. Mr. Serrano's wife could not give consent to search the locked workbench

The principal Fourth Amendment violation Mr. Serrano argued before the district court, and ignored by the district court in its order denying the motion to suppress, was that Ms. Serrano could not consent to the warrantless search of the locked workbench bench, in violation of *Georgia v. Randolph*, 547 U.S. 103, 106 (2006). [ER-210 - ER-211]. When Ms. Serrano told Det. Myers that she did not have her husband's consent to open the locked workbench bench and asked Myers if he could break into it, she told her he cold not do that without a warrant. [ER-90, ER-107, ER-119; RT 25, 42, 54; Defense Exhibit D-5 at 0:54, 1:08, 1:12]. When he later told her there was not sufficient evidence to release her husband and he would be released, she produced a key and opened the workbench in the presence of the police. [ER-96, ER-97, ER-105, ER-107, ER-116-117, ER-120; RT 31-32, 40, 42, 51-52, 55; Defense Exhibits D-12 at 8:52-9:21, D-13 at 6:17-9:11]. She unlocked the drawer, opened it, and Myers used his flashlight to illuminate the area so he could see what was in it. [ER-121, 130; RT 56, 65;

-31-

Defense Exhibits D-12 at 9:21-11:45; D-13 at 6.49 - 9:11]. He would not have been able to see the contents of the drawer if she had not opened it. [RT 65, ER-130]. After that the police searched the formerly locked workbench and inventoried the items found there. [Defense Exhibit D-14 at 0.36 - 9:49].

Ms. Serrano could give consent to common areas they shared, but "a person can expect sole exclusionary authority against the government's warrantless searches if he has a special and private place within the joint residence." *United States v. Dearing*, 9 F.3d 1428, 1429-30 (9th Cir. 1993); *United States v. Reed*, 15 F.3d 928, 930-932 (9th Cir. 1994); *United States v. Morning*, 64 F.3d 531, 536 (9th Cir. 1995); *United States v. Heltsley*, 33 Fed.Appx. 270, 272 (9th Cir. 2002); *United States v. Barnes*, 807 F.Supp. 1154, 1208 (N.D.Ga, 2010). Although normally an area such as a garage or hallway closet would be considered a common area do which a joint occupant could consent to search, as noted *supra*, in this case the garage for the use of Mr. Serrano and other family members had limited access to it. Beyond that, the workbench in the garage was locked, a clear indication that Mr. Serrano intended the content to be private and only he would have access to it. His wife, therefore, could not consent to warrantless search of that space to which Mr. Serrano had a reasonable expectation of privacy.

The warrantless entry to the garage and the initial "peek" into the locked

-32-

workbench bench by Det. Myers, both in violation of the Fourth Amendment, produced at best reasonable suspicion to believe the workbench bench contained incriminating evidence, but a search warrant was required to open it an view the contents. Those violations, however, were eclipsed by the later warrantless search of the locked workbench. It was clear Mr. Serrano had restricted access to the workbench by locking it with a key that only he had permission to use, a fact his wife confirmed. When she told that to Det. Myers, he confirmed that the workbench could not be opened without a warrant. When the police told her that she could not consent to the search of the workbench, she opened it anyway, and they looked. Det. Myers knew she did not have the authority to consent to the search of the workbench, but they let her do it and then proceeded to search the workbench for its contents. Even though Ms. Serrano was a private citizen and not a Government agent, the police knew of and acquiesced in the intrusive conduct and Ms. Serrano was acting to aid law enforcement and to serve her own interest of having her husband arrested. That search produced many of the incriminating items the Government intends to use in this case. See *United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1994); *United States v. Miller*, 688 F.2d 652, 657 (9th Cir. 1982). Their admission as evidence in this case would violate the Fourth Amendment. *Georgia v. Randolph*, 547 U.S. 103, 106 (2006), *United States v.*

-33-

*Heltsley*, 33 Fed.Appx. 270-271 (9th Cir. 2002).

### 4. The opening of the workbench bench and search of it was not a private search

The district court did not address the claim that Ms. Serrano could not consent to the search of the locked workbench bench, but upheld the search on the basis that her actions were a "private search" and not by law enforcement and therefore was not a search under the Fourth Amendment. [ER-18 - ER-22, CR 65]. Under the private search doctrine, evidence that is discovered by a private party for reasons unrelated to law enforcement that is later turned over to law enforcement is not suppressed under the Fourth Amendment. *United States v. Jacobsen*, 466 U.S. 109, 113-114 (1983). The district court also noted thAt this Court has recognized a "gray area" between the extremes of overt governmental participation in a search and complete absence in such participation and that the resolution of cases falling within the "gray area" can best be resolved on a case by case basis, as stated by this Court in *United States v. Walther*, 652 F. 2d 788, 791-793 (9th Cir. 1981). *Walther* stated a two part test to determine if law enforcement was "either directly involved as a participant or indirectly as *an encourager of the private citizen's actions* before we deem the citizen to be an agent of the state." *Walther*, at p. 91 – emphasis added. The two part test, later repeated in *United States v. Miller*, 688 F.2d 652, 657 (9th Cir, 1982) and the

-34-

Fifth, Eighth, Tenth, and Eleventh Circuits is (1) whether law enforcement knew or acquiesced in the intrusive conduct (2) whether the party performing the search intended to assist law enforcement effort or further her or his own ends.[5]

The district court found that the conduct of the Chula Vista police and Ms. Serrano fell with the "gray area" and required the application of the two part test as set forth in *Walther* and *Miller*. [ER-18]. The district court found the police did not "overtly direct" her search of the workbench but neither were they completely uninvolved. [ER-18]. The district court found based upon the video evidence that Ms. Serrano became distraught when she was informed there was not enough evidence to arrest her husband for the sexual assault of her daughter. She then offered to show the police evidence in the garage that her husband was a drug dealer. [ER-19]. She told the police she had come across the key to the work bench because her daughter had found the keys Mr. Serrano kept in his room. The police followed her and held a flashlight while she unlocked the workbench bench and rummaged through the top drawer. The district court found that although the police did not suggest the search to Ms. Serrano or personally manipulate the workbench or its contents, "they clearly had some involvement in the search." [ER-19].

---

[5]*United States v. Paige*, 136 F.3d 1012 (5th Cir. 1998); *United States v. Malbrough*, 922 F.2d 458 (8th Cir. 1990); *United States v. Smythe*, 84 F.3d 1240 (10th Cir. 1996); *United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003).

The district court found that Mr. Serrano was not functioning as a government agent at the time of the search because the police did not acquiesce in it even though they were present at the time of the search. The district court noted that acquiescence may be shown in at least to ways: (1) if the private party search is not illegal, the defendant must show the government encouraged or actively participated in the search or (2) if the private party search is illegal, acquiescence can be found where the government did not discourage the illegal conduct. The district court found there was no showing that Ms. Serrano's actions relating to the search were illegal and there was no showing that the police actively participated or encouraged the search. [ER-20].

That factual finding is clearly erroneous. Assuming Ms. Serrano's action of opening her husband's locked workbench was not illegal, when she said she would do it, Det. Myers responded, "[s]ure, do you want to show me?" [ER-19]. That was encouragement. He and other officers then followed her into the garage, held a flashlight while she unlocked the top drawer, held the flashlight while she rummaged around but was told not to move things, and the police took over once she stopped. That was active participation. The finding by the district court that her actions were not illegal was also clearly erroneous, because she had been told by the police that her husband had to consent to the search, not her, but her actions in opening the

-36-

workbench and allowing the police to search it without a warrant resulted in an illegal search in violation of the Fourth Amendment.

Most "private search" cases involve searches by private parties prior to law enforcement being notified, as in *Jacobsen*; see e.g., *United States . Walter*, 447 U.S. 649 (1980); *United States v. Paige*, 136 F.3d 1012 (5th Cir. 1998); *United States v. Sherwin,* 539 F.2d 1 (9th Cir. 1967); *United States v. Walther*, 652 F.2d 788 (9th Cir. 1981); *United States v. Maher*, 120 F.4th 297 (2d Cir. 2024); *United States v. Rosenow*, 33 F.4th 529 (9th Cir. 2022); *United  States v. Wilson*, 13 F.4th 961 (9th Cir. 2021). Where the private search occurs in the presence of law enforcement, however, Courts are more likely to find the private actor has been converted into a government agent regardless of the private actor's independent motivation. *United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1994); *United States v. Williams*, 354 F.3d 497 (6th Cir., 2003); *United States v. Couch*, 378 F.Supp.2d 50, 57 (N.D.N.Y., 2005). In *United States v. Cleaveland*, 38 F.3d 1092 (9th Cir. 1994), this Court did not find the presence of law enforcement did not convert agents to the power company to government agents, where law enforcement was used as backup to support the power company's independent financial motive to see if power was being illegally diverted and depriving the power company of revenue.

In this case, however like most of the cases that have found the the private

searcher was acting as an agent of law enforcement, Ms. Serrano's search served the same objective as law enforcement, to collect sufficient evidence to arrest her husband. Her motive, to protect her family, may not have been the same as that of the police, but the purpose of her actions in the presence of the police was the same. The district court therefore clearly erred in finding that she was a private actor independent of law enforcement.

### 5. The later search of Mr. Serrano's residence was invalid as fruit of the poisonous tree

The district court found that the warrantless search of Mr. Serrano's locked workbench was not illegal, and therefore the evidence recovered pursuant to the search warrant based upon the prior warrantless search would not be suppressed as fruit of the poisonous tree. [ER-23]. For the reasons previously stated, the search of the locked workbench was illegal, and Mr. Serrano's subsequent warrantless arrest produced an electronic key that opened a safe in a downstairs bedroom that contained $46,050 in cash, drugs, and ammo. That arrest was based upon the illegal search of the locked workbench was therefore illegal, and the key and the items discovered in the wall safe it opened should be suppressed as fruit of the poisonous tree.

Evidence of items found in the locked workbench also proved the probable cause for the warrant that was issued for a general search of Mr. Serrano's residence.

-38-

[ER-237]. The affidavit also referred to $15,000 found in Mr. Serrano's car and a small plastic baggie containing methamphetamine found underneath the driver's floorboard. [ER-237]. The affidavit also referred to a loaded black and gold 9mm handgun with "El Joey" engraved on it, found in a dresser in the upstairs bedroom Mr. Serrano shared with his wife. [ER-237].

When the information based upon the items found in the locked workbench is excised from the affidavit in support of the search warrant, what remains is evidence relevant to the search of Mr. Serramo's car, but not is house with the exception that a gun was later found upstairs. The affidavit, however, gives no reason why possession of a handgun was be illegal, so that alone provides no probable cause for the issuance of a warrant. The items seized from the house as a result of the issuance of the search warrant should therefore have been suppressed as fruit of the poisonous tree.

## CONCLUSION

For the foregoing reasons, Jose Angel Serrano asks this Court to vacate the

district court's order denying his motion to suppress evidence and to grant the motion.

Respectfully submitted,

Dated: May 29, 2025                         s/ *John Lanahan*
                                            JOHN LANAHAN
                                            P.O. Box 601400
                                            San Diego, CA 92160
                                            (619) 237-5498
                                            E-mail: lawnahan@sbcglobal.net
                                            *Attorney for Defendant-Appellant*

## CERTIFICATION OF RELATED CASES

The appellant is unaware if any other case related to this appeal.

Respectfully submitted,

Dated: May 29, 2025                         s/ *John Lanahan*
                                            **JOHN LANAHAN**
                                            P.O. Box 601400
                                            San Diego, California  92160
                                            Telephone:  (619) 237-5498
                                            *Attorney for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE PURSUANT TO FED.R.APP. 32(a)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NUMBER 16-50409.

I certify that:

  X  1.  Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached opening brief is proportionately spaced, has a typeface of 14 points or more and contains 9775 words.

                                            s/ *John Lanahan*

-40-